```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
MISTER SOFTEE, INC. and MISTER SOFTEE OF      :
QUEENS, INC.,                                 :
                                              :
                              Plaintiffs,     :         REPORT &
                                              :         RECOMMENDATION
              -against-                       :         15-CV-4770 (SJ) (SMG)
                                              :
DIMITRIOS KONSTANTAKAKOS and 3 DDD ICE         :
INC.,                                         :
                              Defendants.     :
-------------------------------------------------------------------- x
```

GOLD, STEVEN M., U.S.M.J.:

## INTRODUCTION

Plaintiffs Mister Softee, Inc. and Mister Softee of Queens, Inc. (collectively referred to as "Mister Softee" or "plaintiffs") bring this action under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, for trademark infringement, false designation of origin, and trademark dilution, as well as common law unfair competition and unfair trade practice. Plaintiffs allege that defendant Dimitrios Konstantakakos ("Konstantakakos") owns defendant 3 DDD Ice Inc., which operates an ice cream truck (the "infringing truck") that infringes on plaintiffs' trademark by playing Mister Softee's jingle as it does business. Plaintiffs seek an award of injunctive relief and attorney's fees. Upon plaintiffs' application and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of the Court entered the defendants' defaults. Docket Entries 9, 10. Plaintiffs then moved for entry of a default judgment. Docket Entry 11. Senior United States District Judge Sterling Johnson Jr. has referred plaintiffs' motion to me for report and recommendation. Docket Entry dated November 16, 2015.

## BACKGROUND

Mister Softee owns multiple registered trademarks, including "Mister Softee" and the Mister Softee musical jingle ("Sonic Mark") that are used in connection with mobile ice cream truck businesses that sell ice cream, frozen desserts, novelties, and other products. Complaint, Docket Entry 1, ¶¶ 9, 11-12. Only authorized licensees are permitted to use Mister Softee's trademarks. *Id.* ¶¶ 10, 14. Plaintiffs claim that the Mister Softee marks have been extensively promoted and are associated in the public mind with plaintiffs' products, and that the Sonic Mark in particular is famous and widely recognized as designating plaintiffs' products. *Id*. ¶¶ 15-16, 18-20.

Defendants operate an ice cream truck (the "infringing truck") that plays the Mister Softee jingle as it sells ice cream products. *Id.* ¶ 1. The infringing truck was previously owned by a Mister Softee franchisee, Dimitrios Tsirkos ("Tsirkos"); however, on February 18, 2014, his franchise agreements were terminated. *Id.* ¶¶ 21-22. On August 11, 2014, in a separate trademark infringement lawsuit, Tsirkos filed an affidavit stating that the infringing truck had been sold to 3 DDD Ice Inc., and, in a deposition related to the Tsirkos lawsuit, Konstantakakos admitted to owning both 3 DDD Ice Inc. and the infringing truck. *Id.* ¶¶ 24, 28-29. Plaintiffs allege that the infringing truck is not a Mister Softee truck and has no license to use the Sonic Mark or any of the Mister Softee trademarks. *Id.* ¶ 34. Plaintiffs claim that defendants nevertheless operate an ice cream truck that drives around playing their Sonic Mark. *Id*. ¶¶ 30-34. Plaintiffs contend that defendants' use of plaintiffs' Sonic Mark is deceiving customers, diverting business from authorized franchisees, and diluting and taking from Mister Softee's control the goodwill associated with the Sonic Mark. *Id.* ¶ 40. In addition, plaintiffs are concerned about their inability to guarantee that the ice cream sold by defendants, but associated

with plaintiffs because of defendants' use of the Sonic Mark, is being stored and distributed under sanitary conditions. *Id*.

Plaintiffs were alerted to the ongoing infringement when a video interview with the driver of the infringing truck was posted on the website "Gothamist." *Id.* ¶¶ 30-32. The video features the driver discussing and playing plaintiffs' Sonic Mark. *Id.* Plaintiffs contend that defendants have benefitted from the use of the Sonic Mark without plaintiffs' permission and with the knowledge that plaintiffs have not consented to its use. *Id.* ¶ 36. Plaintiffs assert that defendants are infringing Mister Softee's trademark rights in violation of the Lanham Act.

## DISCUSSION

**I.     Liability**

Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). A court, however, retains the discretion to determine whether a final default judgment is appropriate. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Thus, despite a defendant's default, the plaintiff bears the burden of demonstrating that the unchallenged allegations, without more, establish the defendant's liability on each asserted cause of action. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action); *Microsoft Corp. v. Computer Care Ctr., Inc.*, 2008 WL 4179653, at *6 (E.D.N.Y. Sept. 10, 2008).

Plaintiffs allege that defaulting defendants should be held liable for trademark infringement, false designation of origin, and dilution of plaintiffs' famous mark, as well as

3

common law unfair competition and unfair trade practices. In addition, plaintiffs seek a permanent injunction and reimbursement of their attorney's fees.

The allegations in the complaint clearly establish the elements of liability required to state claims of trademark infringement and false designation of origin pursuant to the Lanham Act.

> The central focus of the Lanham Act . . . is to protect the holders of trademarks from the promotion and sale of competing products likely to confuse consumers as to their source. Thus, to prevail [on claims of trademark infringement and false designation of origin,] plaintiffs need only show that they own a valid trademark and that the defendants' use of the trademark is likely to cause confusion regarding the source of the product.

*Tanning Research Labs., Inc. v. Worldwide Imp. & Exp. Corp.*, 803 F. Supp. 606, 608-09 (E.D.N.Y. 1992) (internal citation omitted). "Likelihood of confusion includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification." *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 383 (2d Cir. 2005) (internal quotation marks and citation omitted). Courts evaluate whether a likelihood of confusion has been established by considering the eight non-exhaustive *Polaroid* factors: "the strength of [plaintiff's] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, . . . defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers." *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). "The analysis is 'not mechanical, but rather, focuses on the ultimate question of whether, looking at the products [or services] in their totality, consumers are likely to be confused.'" *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 160 (E.D.N.Y. 2013) (alteration in original) (quoting *Star Indus., Inc.*, 412 F.3d at 384).

Plaintiffs own a valid federally registered trademark for the Mister Softee Sonic Mark. Compl. ¶ 12, Ex. A. The complaint alleges that defendants own and operate a truck that "drives around playing the Mister Softee Sonic Mark" and "plays the Mister Softee Sonic Mark as [it] pulls up to the location" where the truck parks and sells ice cream. Compl. ¶¶ 29-32. Further, the complaint alleges that defendants know that plaintiffs have not consented to their use of the Mister Softee Sonic Mark and are knowingly using the mark without authorization. *Id.* ¶¶ 34, 36. Thus, the allegations of the complaint adequately establish that plaintiffs own a valid trademark and that defendants used it.

The allegations of plaintiffs' complaint, when measured against the *Polaroid* factors, convincingly demonstrate likelihood of confusion. First, determinations about the strength of plaintiffs' mark require an examination of its tendency to "identify the goods [or services] sold under the mark as emanating from a particular . . . source." *The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960-61 (2d Cir. 1996) (internal quotation marks and citation omitted). Plaintiffs' mark is strong. As a registered mark, it is presumed to be suggestive, arbitrary, or to have secondary meaning. *Rolex Watch U.S.A., Inc. v. Jones*, 2000 WL 1528263, at *2 (S.D.N.Y. Oct. 13, 2000). In addition, plaintiffs have used and marketed the Mister Softee Sonic Mark since 1960, further enhancing its strength. Compl. ¶ 15.

With respect to the similarity between the two marks, plaintiffs contend that defendants are using an identical copy of the Sonic Mark. In addition, the products sold are proximate, in that both parties operate ice cream trucks in and around New York City. Given the identical nature and proximity of the marks, there is no gap to bridge. Plaintiffs have not demonstrated actual confusion, but they are required to demonstrate only a likelihood of confusion as to source. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986).

This they have done, by alleging that defendants are using an exact replica of their Sonic Mark to alert customers to their presence and attract them to their ice cream truck, which operates in the same business and geographic location as plaintiffs' trucks. Compl. ¶¶ 3-6, 30-32.

Bad faith has been established by plaintiffs' unchallenged allegations in the complaint that defendants "willfully intended to trade on Mister Softee's reputation," and may also be inferred from defendants' intentional copying of plaintiffs' Sonic Mark. Compl. ¶ 37; *see Stark Carpet Corp.*, 954 F. Supp. 2d at 161-62 (noting that deliberate copying may indicate bad faith). The inference of bad faith is further supported by defendants' knowledge of an almost identical trademark infringement suit against the former owner of the infringing truck. Compl. ¶¶ 23-24, 28-30. Finally, plaintiffs' customers are primarily small children, who are unsophisticated consumers and are likely to be easily confused by the identical Sonic Marks. Compl. ¶ 20. While plaintiffs did not introduce any evidence of the quality of defendants' products, the other factors weigh heavily enough in plaintiffs' favor to support the conclusion that there is a likelihood of confusion. I therefore conclude that plaintiffs have sufficiently alleged the elements of trademark infringement and false designation of origin pursuant to the Lanham Act.[1]

Plaintiffs seek to hold defendants jointly and severally liable. Both defendants were served in this lawsuit. Defendant Konstantakakos admitted, both in a deposition and by his default, that he is the owner of the infringing truck and defendant 3 DDD Ice Inc. Accordingly, I conclude that Konstantakakos had control over 3 DDD Ice Inc. and the infringing truck and

---

[1] In their complaint, plaintiffs seek relief for dilution of their trademark pursuant to 15 U.S.C. § 1125(c) and assert common law claims of unfair competition and unfair trade practice. These claims are not explicitly reasserted in plaintiffs' Motion for Entry of Judgment by Default, Permanent Injunction, and Attorney's Fees. Docket Entry 11. Because these claims seek relief for the same injuries asserted in connection with plaintiffs' federal claims of trademark infringement and false designation of origin, and because plaintiffs do not seek a separate award of damages or equitable relief pursuant to these claims, I have not considered whether their elements are satisfied by the well-pleaded allegations of the complaint.

received financial benefit from their operation.  I therefore respectfully recommend that Konstantakakos and 3 DDD Ice Inc. be held jointly and severally liable for trademark infringement and false designation of origin.  *See Sexy Hair Concepts, LLC v. Sexy Hair Inc.*, 2013 WL 5460629, at *4 (E.D.N.Y. Sept. 30, 2013) (holding that a party with supervisory authority over infringing activities and a financial interest in exploiting copyrighted materials may be held jointly liable for infringement); *Tanning Research Labs., Inc*, 803 F. Supp. at 611.

## II.     Damages and Equitable Relief

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not.  *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.  A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment.  *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40.  Although plaintiffs' complaint requests money damages and costs, in addition to attorney's fees and injunctive relief, plaintiffs' motion for entry of a default judgment seeks only injunctive relief and attorney's fees.  Defendants have failed to submit any response to these filings.  In light of these circumstances, a hearing on the issue of damages is not warranted.

### A. *Injunctive Relief*

Plaintiffs seek an injunction permanently enjoining defendants from infringing their Sonic Mark.  A court may "issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute, and (2) it meets the prerequisites for the issuance of an injunction."  *Main Events/Monitor Prods. v.*

*Batista*, 1998 WL 760330, at *1 (E.D.N.Y. Aug. 26, 1998). Plaintiffs satisfy the first condition because an injunction is an available remedy under 15 U.S.C. § 1116(a) for violations of "any right of the registrant," including trademark infringement and false designation of origin, both of which have been established. As to the second requirement, a party seeking an injunction must meet the conditions set forth in *Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010). S*ee U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 539 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013). *Salinger* requires that a plaintiff "first demonstrate either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]'s favor." *Krevat v. Burgers to Go, Inc.*, 2014 WL 4638844, at *12 (E.D.N.Y. Sept. 16, 2014) (alteration in the original) (internal quotation marks and citations omitted). Here, plaintiffs have established liability by virtue of the well-pleaded allegations of their complaint and defendants' default, and have thus succeeded on the merits of their trademark infringement and false designation of origin claims.

A plaintiff must then demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Salinger*, 607 F.3d at 77 (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). When assessing whether an irreparable injury has occurred, "the court must actually consider the injury the plaintiff [has] suffer[ed] . . . , paying particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Salinger*, 607 F.3d at 80 (internal quotation marks and citation omitted). A loss that is difficult to replace or to

measure is generally irreparable. *Id.* at 81. Here, plaintiffs have alleged that, as a result of defendants' infringement, business will be diverted and goodwill associated with the Sonic Mark will be taken from their control. Compl. ¶ 40. Reputational damage is difficult to measure and constitutes an irreparable injury.

"In the absence of assurances in the record against a defendant's continued infringing activity, a remedy at law may be deemed insufficient to compensate a plaintiff for [its] injuries." *Stark Carpet Corp.*, 954 F. Supp. 2d at 158 (internal quotation marks and citations omitted). "Where the defendant defaults, [a] court may infer . . . that [defendant] is willing to, or may continue its infringement." *Sexy Hair Concepts, LLC*, 2013 WL 5460629, at *4 (alterations in the original) (internal quotation marks and citation omitted). Defendants' defaults give rise to the inference that defendants are willing to continue infringing plaintiffs' Sonic Mark, leading to the conclusion that plaintiffs have no adequate remedy at law. Where plaintiffs establish irreparable harm and that the infringing conduct is likely to continue absent injunctive relief, the balance of hardships will generally tip in plaintiffs' favor. *AW Indus., Inc. v. Sleepingwell Mattress Inc.*, 2011 WL 4404029, at *11 (E.D.N.Y. Aug. 31, 2011), *adopted by* 2011 WL 4406329 (E.D.N.Y. Sept. 21, 2011). Finally, the public interest will likely be served if an injunction is issued. The public has a strong interest in being protected from infringement and the confusion it causes. *Finity Sportswear, Ltd. v. Airnit, Inc.*, 631 F. Supp. 769, 771 (S.D.N.Y. 1985). Because defendants' continued use of plaintiffs' Sonic Mark is likely to cause consumer confusion, enjoining further infringement protects consumers and serves the public interest. Therefore, I respectfully recommend that the Court enter an order permanently enjoining defendants from using and infringing plaintiffs' Sonic Mark.

### B. Attorney's Fees and Costs

Under the Lanham Act, "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Exceptional circumstances include willful infringement, and thus, a "finding of willfulness determines the right to attorneys' fees." *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995). "When a defendant has defaulted, then by virtue of its default it is deemed to be a willful infringer." *Lyons P'ship, L.P. v. D&L Amusement & Entm't Inc.*, 702 F. Supp. 2d 104, 119 (E.D.N.Y. 2010) (internal quotation marks and citation omitted). Because defendants have defaulted, they are deemed to be willful infringers, and this case is as a result "exceptional" for the purpose of determining plaintiffs' entitlement to attorney's fees.

In the Second Circuit, courts determine a "presumptively reasonable fee" award by calculating the product of the hours reasonably expended and a reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008). A reasonable rate is determined by considering what a reasonable paying client would be willing to pay, taking into account, among other things, the complexity and difficulty involved in the case and the resources required to prosecute it effectively. *Id.* Generally, courts should determine fee awards by applying rates charged by attorneys employed in the district where the court sits. *Id.*

In addition, all claims for attorney's fees in the Second Circuit must comply with *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983), which requires contemporaneous time records that show, "for each attorney, the date, the hours expended, and the nature of the work done." *Id.* at 1148. Counsel for plaintiffs have submitted their contemporaneous time records. Docket Entry 15.

Plaintiffs hired two law firms to represent them in this action: Tor Ekeland, P.C. of New York and Fisher Zucker LLC of Pennsylvania. *See* Docket Entry 15. I address the submissions from each firm separately.

1. Fisher Zucker LLC's Attorney's Fees

Fisher Zucker LLC asserts that, between August 4, 2015 and March 14, 2016, two attorneys expended a total of 31.2 hours on this matter. Docket Entry 15-2. This includes 27.8 hours spent by Frank Reino, an attorney with thirteen years of experience, at $365 per hour, and 3.4 hours spent by Jeffrey Zucker, the managing partner of the firm, at $425 per hour. Docket Entry 15-2 at 2, Ex. A. Fisher Zucker LLC has made a brief showing of the professional experience of these attorneys, but has not made any attempt to demonstrate the reasonableness of the hourly rates charged by the firm in light of the prevailing rates in this district or to demonstrate any particular expertise that would justify a higher rate. *See Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, 2009 WL 5185808, at *4-6 (E.D.N.Y. Dec. 23, 2009), *aff'd*, 409 Fed. App'x 389 (2d Cir. 2010); Docket Entry 15-2 at 1-2. The burden is on the moving party to show that the fees it requests are reasonable. *Cruz v. Local Union No. 3 of Int'l Bhd. Of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Although similar and even higher rates have been approved in intellectual property cases in this jurisdiction, the parties in those cases provided the court with evidence of the qualifications and experience of the attorneys. *See Protection One Alarm Monitoring, Inc. v. Exec. Protection One Sec. Serv., LLC*, 553 F. Supp. 2d 201, 208-09 (E.D.N.Y. 2008). Where parties fail to provide that information, courts use their discretion to award fees at a rate lower than requested. *See id.* Here, because counsel has failed to provide information regarding any specific intellectual property expertise of the attorneys that would

11

justify a higher rate, and in light of the relatively simple and straightforward nature of the matter, I recommend that Mr. Zucker be compensated at the rate of $325 per hour and that Mr. Reino be compensated at a rate of $265 per hour. *See Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 2009 WL 5185808, at *5.

Next, I turn to the question of whether the hours expended by counsel were reasonable in an action of this nature. If the Court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." *Louis Vuitton Malletier, S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012). Where time entries are vague, duplicative, or otherwise inadequate, a court may make an "across-the-board reduction, or percentage cut, in the amount of hours." *T.S. Haulers, Inc. v. Cardinale*, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011).

Fisher Zucker LLC seeks fees for 31.2 hours expended on this case premised on the submission of what appear to be invoices submitted to the client containing many entries with minimal or ambiguous explanations. *See generally* Docket Entry 15-2 at 5-11. Many entries offer no description of the tasks performed other than that emails with local counsel were sent and received. Moreover, spending any time at all communicating with local counsel seems unreasonable, because there is little to justify retaining two law firms to handle a matter as straightforward as this one. In addition, there are several entries contained in the records that appear to have little or nothing to do with litigating this case, or in fact providing legal services at all. For example, counsel billed almost two hours for telephone calls and correspondence with Good Morning America and reporters from various media outlets, including the New York Daily News, News 1 NY, and ABC News. Docket Entry 15-2 at 5. Another example of questionable billing appears where counsel charged for approximately two hours to "[d]raft default request

package" on November 20, 2015, sixteen days after plaintiffs' motion for default judgment was filed and a date around which no other filings were made by plaintiffs. Docket Entries 11 and 15-2 at 8. In addition to these rather large examples, there are several minor inconsistencies, such as entries noting "[e]mail to and from local counsel" with no corresponding entry entered on local counsel's time sheets. Docket Entry 15-2. As a result of the accumulation of vague and unreasonable billing entries, the large amount of time spent on a relatively straightforward matter, and this Circuit's requirement that a court consider the amount of time reasonably spent, I conclude that a reduction of counsel's hours by 40% is reasonable. I therefore recommend an award of $5,083.20 in fees attributable to the work completed by Fisher Zucker LLC.[2]

        2. Tor Ekeland, P.C.'s Attorney's Fees

Tor Ekeland, P.C. asserts that, between August 11, 2015 and February 17, 2016, attorneys and support staff spent a total of 33.95 hours on this case. Docket Entry 15-1. This includes 7.2 hours by Mark Jaffe, a partner, at $250 per hour; 22.37 hours by Frederic Jennings, a third-year associate, at $200 per hour;[3] 0.64 hours by Adam Elewa, a second-year associate, at $200 per hour; and 3.37 hours by Jerry Lambe, a legal intern, at $125 per hour. Docket Entry 15 at 1-2.

Tor Ekeland, P.C. has likewise presented only a brief overview of the attorneys' experience. The rate charged by Mark Jaffe, a partner, is well within the appropriate range for this district, especially given his trademark experience, *Koon Chun Hing Kee Soy & Sauce*

---

[2] This sum represents the 27.8 hours billed by Mr. Reino, reduced by 40%, at a rate of $265.00 per hour and the 3.4 hours billed by Mr. Zucker, reduced by 40%, at a rate of $325.00 per hour.

(27.8 x (.60)) x $265 = $4,420.20

(3.4 x (.60)) x $325 = $663

$4,420.20 + $663 = $5,083.20

[3] The submitted billing records indicate that Mr. Jennings billed some administrative tasks at a lower rate of $125 per hour, but it is not clear that this practice was consistently observed.

13

*Factory, Ltd.*, 2009 WL 5185808, at *5 (collecting cases); however, the rates charged by Mr. Elewa, Mr. Jennings, and Mr. Lambe are not within the reasonable range for this district and accordingly are adjusted to $150 per hour, $150 per hour, and $100 per hour respectively. *See Gen. Nutrition Inv. Co. v. Gen. Vitamin Ctrs., Inc.*, 817 F. Supp. 2d 66, 76 (E.D.N.Y. 2011) (collecting cases).

A number of billing entries seem to be inappropriately vague or improperly billed to this matter and prevent me from properly evaluating the time spent. *See* Docket Entry 15 at 1-2. For example, over three hours were spent to "prepare witness binders," yet there were no depositions or evidentiary hearings held during the litigation. While on some occasions the rates were decreased to reflect the administrative nature of the tasks performed, that was not always the case; for example, Mr. Jennings appears to have billed time spent sending emails concerning service of papers and preparing tables of contents and authorities at his full hourly rate. Docket Entry 15-1. For these reasons, a reduction in the amount of fees sought by plaintiffs is appropriate. I determine that an across-the-board reduction of counsel's hours by 15% is reasonable to account for these circumstances. I also determine that the entire 3.37 hours of work attributed to Mr. Lambe's preparation of witness binders be disallowed, as there is no indication in any of the papers filed with the Court that there were any witnesses that could make Mr. Lambe's lone entry properly attributable to this case. I therefore recommend an award of $4,463.78 in fees attributable to the work completed by Tor Ekeland, P.C.[4]

---

[4] This sum represents the hours billed by Mr. Jaffe, Mr. Jennings, and Mr. Elewa, reduced by 15% and multiplied by the appropriate hourly rates.

Mr. Jaffe: (7.2 x (.85)) x $250 = $1,530.00

Mr. Jennings: (22.37 x (.85)) x $150 = $2,852.18

Mr. Elewa: (.64 x (.85)) x $150 = $81.60

Total: $2,852.18 + $1,530.00 + $81.60 = $4,463.78

3. Costs

Plaintiffs are entitled to costs under the terms of 15 U.S.C. § 1117(a), which entitles a party to the "costs of the action" when trademark infringement is established. In addition to taxable costs under 28 U.S.C. § 1920, out of pocket costs necessary for the representation are also generally recoverable. *Protection One Alarm Monitoring, Inc.*, 553 F. Supp. 2d at 210-11. Plaintiffs seek $679.91 in costs representing electronic research costs, the filing fee, and courier service. Counsel's time records include costs billed to plaintiffs, and I recommend that they be awarded here.

## CONCLUSION

For the reasons stated in this Report and Recommendation, I respectfully recommend that plaintiffs' motion for default judgment be granted with respect to defaulting defendants and that judgment be entered, jointly and severally, against Dimitrios Konstantakakos and 3 DDD Ice Inc. I further recommend that a permanent injunction be issued that prohibits defendant Dimitrios Konstantakakos and defendant 3 DDD Ice Inc., as well as its officers, agents, servants, employees, and any persons, firms, or corporations acting in concert with it or on its behalf, from using the Mister Softee Sonic Mark. Finally, I recommend that plaintiffs be awarded $9,546.98 in attorney's fees[5] and $679.91 in costs, for a total of $10,226.89.

Any objections to the recommendations made in this Report must be submitted within fourteen days after filing of the Report and, in any event, no later than July 14, 2016. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the

---

[5] This sum includes $5,083.20 attributable to Fisher Zucker LLC and the $4,463.78 attributable to Tor Ekeland, P.C. $5,083.20 + $4,463.78 = $9,546.98

15

right to appeal the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).

Plaintiffs shall serve this Report and Recommendation on defaulting defendants by letter sent to their last known addresses and shall promptly file proof of service with the Court.


                                                /s/
                                    STEVEN M. GOLD
                                    United States Magistrate Judge

Dated:       Brooklyn, New York
                June 27, 2016

U:\AJC 2015-2016\Mister Softee v. Konstantakakos\Mister Softee v. Konstantakakos Default Final.docx